# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| EVETTE JOHNSON | ) | CASE NO. |
| 128 Parksley Lane, Apt 202 | ) | |
| Leland, North Carolina 28451 | ) | JUDGE: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PENDER COUNTY DEPARTMENT OF | ) | **COMPLAINT FOR DAMAGES** |
| SOCIAL SERVICES | ) | **AND INJUNCTIVE RELIEF** |
| 810 S Walker Street | ) | |
| Burgaw, North Carolina 28425 | ) | **JURY DEMAND ENDORSED** |
| | ) | **HEREIN** |
| **Serve also:** | ) | |
| PENDER COUNTY | ) | |
| PO Box 1578 | ) | |
| Burgaw, NC 28425 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Evette Johnson, by and through undersigned counsel, as her Complaint against

Pender County Department of Social Services ("PCDSS"), states and avers the following.

## PARTIES

1. Johnson is a resident of the city of Leland, county of Brunswick, state of North Carolina.

2. PCDSS is a local agency that provides programs and social services to the citizens of Pender County, North Carolina.

3. PCDSS was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

4. PCDSS hires citizens of the state of North Carolina; contracts with companies in North Carolina; and owns or rents properties in North Carolina. As such, the exercise of personal jurisdiction over RTI comports with due process.

5. This Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1331, in that Johnson is alleging Federal Law Claims under Title VII of the Civil Rights of 1964 ("Title VII"), 42. U.S.C. § 2000e-2 *et seq*.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because at all times relevant hereto, Defendant is and always has been responsible for the acts alleged herein, a substantial portion of the practices complained of herein occurred in the District, and Defendant has received substantial compensation as a result of doing business in this District. Moreover, at all times material to the allegations contained here, Defendant was registered to conduct business in the state of North Carolina and/or conducted substantial business in the state of North Carolina.

7. Title VII and the ADEA abrogate PCDSS's sovereign immunity under the Eleventh Amendment and permit parties to sue the State as the Constitutional provision underlying the statute was enacted after the Eleventh Amendment. *See* Fitzpatrick *v. Bitzer*, 477 U.S. 445 (1976); *See also Keller v. Prince George's Cty.,* 827 F.2d 952, 965 n. 19 (4th Cir. 1987); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44 (1996).

## ADMINISTRATIVE PROCESS

8. On or about April 5, 2023, Johnson filed a Charge of Discrimination ("Charge of Discrimination") with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 433-2023-01804 against PCDSS.

9. On or about April 11, 2023, Johnson filed an Amended Charge of Discrimination with the EEOC against PCDSS.

10. On or about March 21, 2024, the EEOC issued and mailed a Notice of Right to Sue letter to Johnson regarding the Charge of Discrimination brought by Johnson against PCDSS.

11. Johnson received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) – which is attached hereto as Exhibit 1.

12. Johnson filed this Complaint within 90 days of her receipt of the Notice of Right to Sue.

13. Johnson has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## TITLE VII COVERAGE

14. At all times referenced herein, Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b), in that it was engaged in an industry affecting commerce and had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

15. At all times referenced herein, Johnson was an "employee" of LSCO within the meaning of 42 U.S.C. § 2000e(f), in that she was an individual employed by an employer.

## FACTUAL ALLEGATIONS.

16. Johnson is African American.

17. Johnson is a former employee of PCDSS.

18. In mid-2022, Johnson applied for a Lead Caseworker position in PCDSS's Energy Department.

19. In mid-2022, Johnson applied for a Lead Caseworker position in PCDSS's Childcare Department.

20. Upon information and belief, Allison Jenkins ("Jenkins") was hired for the Lead Caseworker position in PCDSS's Energy Department.

21. Jenkins is Caucasian.

22. Upon information and belief, Jenkins had no prior experience in a Lead Caseworker position.

23. Upon information and belief, Sandra Morrison ("Morrison") was hired for the Lead Caseworker position in PCDSS's Childcare Department.

24. Morrison is Caucasian.

25. Upon information and belief Morrison had no prior experience in a Lead Caseworker Position.

26. After being rejected for both Lead Caseworker positions, Johnson applied for a Caseworker position in PCDSS's Childcare Department.

27. On or about October 30, 2022, PCDSS hired Johnson as a Caseworker for the Childcare Department.

28. Johnson was qualified for her position.

29. Johnson was hired by Deanna Everhart ("Everhart"), Income Maintenance Caseworker Supervisor.

30. Everhart is Caucasian.

31. Johnson's second-level supervisor was Amanda Howard ("Howard").

32. Howard is Caucasian.

33. During Johnson's first shift on October 30, 2022, Howard informed Johnson would train in PCDSS's Energy Department before joining the Childcare Department.

34. Everhart left PCDSS shortly after Johnson's date of hire.

35. In approximately November 2022, Kimberly Heath ("Heath") became Johnson's direct supervisor.

36. Heath is Caucasian.

37. Throughout November and December 2022, Heath directed Johnson to continue training in the Energy Department.

38. In approximately November 2022, Heath began training Jenkins for the Childcare Department.

39. Upon information and belief, Jenkins was hired as a Caseworker in the Energy Department.

40. Upon information and belief, Jenkins notified Heath that she did not want to work in the Energy Department.

41. Upon information and belief, Heath agreed to train Jenkins for the Childcare Department although Johnson was hired for the Caseworker position in the Childcare Department.

42. In January 2023, Heath announced that all Caseworkers would be cross-trained between the departments within PCDSS.

43. Upon information and belief, Heath only cross-trained Jenkins for the Childcare Department and the Energy Department.

44. On or about February 22, 2023, Heath and Howard met with Johnson.

45. During the meeting, Howard requested that Johnson remain in the Energy Department to allow Jenkins to work full-time in the Childcare Department.

46. Johnson declined the request to become a permanent Energy Department Caseworker.

47. After Johnson declined the offer, Heath stated Johnson had to take the permanent Energy Department Caseworker position.

48. After meeting with Heath and Howard, Johnson called Wesley Stewart ("Stewart"), Agency Director.

49. Stewart is Caucasian.

50. Johnson complained to Stewart that Jenkins was being favored for the Childcare Department Caseworker based on her race. ("Johnson's First Complaint of Discrimination").

51. Upon information and belief, Stewart suggested to Howard that Jenkins and Johnson both train in the Childcare Department.

52. Upon information and belief, Howard asserted to Stewart that she had assessed Jenkins' and Johnson's skills and determined Jenkins was a better fit for childcare and Johnson was a better fit for energy.

53. On February 23, 2023, Johnson spoke with Rebecca Smith ("Smith"), Human Resources Representative, regarding her concerns about discrimination because of her race. ("Johnson's Second Complaint of Discrimination").

54. Smith did not take prompt remedial action to address Johnson's Second Complaint of Discrimination.

55. On or about February 24, 2023, Johnson emailed Smith a summary of her Complaint from the day prior.

56. Johnson also carbon copied the Human Resources Director Pamela Brame ("Brame"), Stewart, Howard, and Johnson on the February 24, 2023 email.

57. In her February 24, 2023 email, Johnson complained that she was facing discrimination, racism, retaliation, and a hostile work environment. ("Johnson's Third Complaint of Discrimination").

58. In her February 24, 2023 email, Johnson also noted concerns that she was facing discrimination for eating lunch with two Hispanic employees.

59. On March 2, 2023, Johnson met with Smith, Brame, Stewart, Howard, and Heath.

60. During the meeting, Stewart stated he did not care who Johnson ate lunch with at work.

61. Brame was dismissive toward Johnson's complaint.

62. Following the March 2, 2023 meeting, PCDSS did not conduct an investigation into Johnson's Third Complaint of Discrimination.

63. PCDSS did not take prompt remedial actions to address Johnson's Third Complaint of Discrimination.

64. On March 20, 2023, Heath conducted a performance evaluation for Johnson.

65. Jeffrey Cocoa ("Cocoa"), Compliance Supervisor, observed the performance evaluation.

66. Heath did not evaluate Johnson's performance in the Childcare Department.

67. Heath only evaluated Johnson's performance in the Energy Department.

68. Heath stated Johnson needed improvement in her work in the Energy Department.

69. Heath provided Johnson with a list of alleged applications that Johnson had processed incorrectly.

70. Several of the applications on Heath's list were for online applications.

71. Johnson notified Heath that Johnson had not been trained in processing online applications in the Energy Department.

72. On April 3, 2023, Johnson complained to Howard that she was not getting the same quality of training as Jenkins. ("Johnson's Fourth Complaint of Discrimination").

73. On April 5, 2023, Johnson filed a Charge of Discrimination with the EEOC against PCDSS.

74. On April 11, 2023, Stewart requested to meet with Johnson in PCDSS's auditorium.

75. Brame, Howard, and Heath were present in the auditorium for the meeting.

76. Stewart stated Johnson's employment was terminated based on complaints about her performance by Howard and Heath.

77. Stewart handed Johnson a letter stating that the termination was based on job performance and behavior.

78. The letter stated Johnson did not have the right to appeal PCDSS's decision to terminate her employment.

79. Termination of Johnson was an adverse employment action.

80. PCDSS knowingly terminated Johnson's employment.

81. PCDSS knowingly took an adverse employment action against Johnson.

82. PCDSS intentionally terminated Johnson's employment.

83. PCDSS intentionally took an adverse employment action against Johnson.

84. PCDSS knew that terminating Johnson's employment would cause her harm, including economic harm.

85. PCDSS willfully terminated Johnson's employment.

86. PCDSS willfully took an adverse employment action against Johnson.

87. PCDSS's purported reason for Johnson's termination is pretext for race discrimination.

88. PCDSS's purported reason for Johnson's termination is pretext for retaliation.

89. PCDSS's assertion that Johnson was terminated for performance and behavior has no basis in fact.

90. PCDSS's assertion that Johnson was terminated for performance and behavior did not actually motivate their decision to terminate Johnson.

91. As a direct and proximate result of PCDSS's conduct, Johnson suffered and will continue to suffer damages, including economic and emotional distress.

**COUNT I: RACE DISCRIMINATION IN VIOLATION OF TITLE VII**

92. Johnson restates each and every prior paragraph of this complaint as if it were fully restated herein.

93. Pursuant to 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

94. Throughout her employment, Johnson was fully competent to perform her essential job duties.

95. PCDSS treated Johnson differently than other similarly situated employees based on her race.

96. PCDSS took adverse employment action against Johnson because of her race.

97. On or about April 11, 2022, PCDSS terminated Johnson's employment because of her race.

98. As a result of PCDSS's discrimination against Johnson in violation of 42 U.S.C. § 2000e-2(a)(1), Johnson has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Johnson to compensatory monetary relief.

99. As a result of PCDSS's discrimination against Johnson in violation of 42 U.S.C. § 2000e-2(a)(1), Johnson has suffered mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

100. In its discriminatory actions as alleged above, PCDSS acted with malice or reckless indifference to the rights of Johnson, thereby entitling Johnson to an award of punitive damages.

101. To remedy the violations of the rights of Johnson secured by 42 U.S.C. § 2000e-2(a)(1), Johnson requests that the Court award her the relief prayed for below.

## COUNT II: RETALIATION IN VIOLATION OF TITLE VII

102. Johnson restates each and every paragraph of this complaint, as if it were fully restated herein.

103. Pursuant to 42 U.S.C. § 2000e-3(a), it is an unlawful employment practice for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

104. On or about February 22, 2022, Johnson opposed race discrimination.

105. On or about February 23, 2022, Johnson opposed race discrimination.

106. On or about February 24, 2022, Johnson opposed race discrimination.

107. On or about April 3, 2022, Johnson opposed race discrimination.

108. On or about April 5, 2022, Johnson filed a Charge of Discrimination with the EEOC against PCDSS.

109. On or about April 11, 2022, PCDSS terminated Johnson's employment.

110. PCDSS terminated Johnson in retaliation for opposing discrimination.

111. PCDSS terminated Johnson for filing a Charge of Discrimination with the EEOC.

112. As a direct and proximate result of PCDSS's conduct, Johnson suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## DEMAND FOR RELIEF

WHEREFORE, Johnson demands from Defendant the following:

(a) Issue an order requiring Defendant to restore Johnson to one of the positions to which she was entitled by virtue of her application and qualifications, and expunger her personal file of all negative documentation;

(b) An award against Defendant of compensatory and monetary damages to compensate Johnson for compensatory damages, non-compensatory damages, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of damages of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Johnson's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as the Court may deem necessary and proper.

Respectfully submitted,

/s/ *Evan Gungor*
_____

Evan Gungor
N.C. State Bar No. 60902
**SPITZ, THE EMPLOYEE'S LAW FIRM**
5540 Centerview Drive, Suite 200B
Raleigh, North Carolina 27606
Phone: (980) 332-4688
Fax:     (216) 291-5744
Email: evan.gungor@spitzlawfirm.com
*Attorney for Plaintiff Evette Johnson*

**JURY DEMAND**

Plaintiff Johnson demands a trial by jury by the maximum number of jurors permitted.

*/s/ Evan Gungor*
Evan Gungor
